# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Logan,                          :
              Petitioner  :
                                :
        v.                              :   No. 2605 C.D. 2015
                                :   Submitted: September 30, 2016
Workers' Compensation Appeal          :
Board (City of Philadelphia),          :
              Respondent  :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE SIMPSON              FILED: March 9, 2017

In this case, another in a series of appeals involving cancer claims under Section 108(r) of the Workers' Compensation Act (Act),[1] Thomas Logan (Claimant), a retired firefighter, petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming an order of Workers' Compensation Judge Scott Olin (WCJ) denying his claim for prostate cancer caused by occupational exposure to known carcinogens during his employment as a firefighter. Claimant contends the decisions of the WCJ and Board are unsupported by competent medical evidence and inconsistent with the applicable case law. For the reasons that follow, we are compelled to affirm.

---

[1] Act of June 2, 1915, P.L. 736, as amended, added by the Act of December 6, 1972, P.L. 930, 77 P.S. §27.1(r). Section 301(c)(2) of the Act, 77 P.S. §411(2), provides that the term "injury" as used in the Act shall include an "occupational disease" as defined in Section 108 of the Act. The Act of July 27, 2011, P.L. 251, commonly known as Act 46, amended Section 108 to include: "(r) Cancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer." 77 P.S. §27.1(r).

## I. Background

### A. Claim and Penalty Petitions

In April 2012, Claimant filed a claim petition under Section 108(r) of the Act alleging that he sustained prostate cancer in February 1997 as a result of exposures to IARC (International Agency for Research on Cancer) Group I carcinogens while working as a firefighter for the City of Philadelphia (Employer). Claimant sought payment of all related medical bills, including ongoing medical bills, and total disability benefits for the period of February 11 through May 1, 1997. In October 2012, Claimant filed a penalty petition alleging Employer violated the Act by failing to provide discoverable material.

### B. Evidence

Based upon an extensive review of the evidence presented by both parties, the WCJ dismissed Claimant's claim and penalty petitions. Ultimately, the WCJ determined Claimant's medical evidence failed to establish his prostate cancer was causally related to his firefighting duties. To that end, the WCJ rejected Claimant's medical testimony as to causation of his cancer and accepted Employer's medical testimony that prostate cancer is much more a disease of aging than it is of external influences.

Claimant, 68 years old at the time of his testimony, stated he worked for Employer as a firefighter for 34 years. Claimant underwent a physical examination when hired in 1970; he had no physical restrictions and no record of cancer. During his career, Claimant spent five years at Engine 53 and the

remainder at Ladder 27. Both stations used diesel vehicles; Claimant therefore encountered fuel emissions every shift he worked throughout his career.

Claimant fought fires his entire career; he spent no time in an office position. In total, Claimant responded to a couple thousand fires and suffered smoke exposure at each one. These included interior, exterior and transformer fires, which all involved exposure to several Group 1 carcinogens.

In 1997, while assigned to Ladder 27, Claimant's family doctors diagnosed him with prostate cancer following a PSA (prostate specific antigen) test and a biopsy. Claimant underwent a radical prostatectomy and missed about six months of work. Claimant last worked as a firefighter in 2004.

In support of his claim petition, Claimant submitted reports and deposition testimony from Dr. Barry L. Singer (Claimant's Expert), a physician board certified in internal medicine, hematology and medical oncology. Claimant's Expert reviewed Claimant's treatment records and Claimant's affidavit regarding his occupational history and exposure. Claimant's Expert also reviewed various studies relating firefighting with an increased risk of cancer, including specific studies relating prostate cancer to firefighting. Ultimately, Claimant's Expert opined that Claimant's occupational exposure to Group 1 carcinogens while working for Employer was considerable and constituted a substantial contributing factor in the development of Claimant's prostate cancer.

In response to Claimant's evidence, Employer submitted the deposition testimony of Dr. Tee L. Guidotti (Employer's Expert), a physician board certified in internal medicine, pulmonary medicine and occupational medicine. See Dep. of Dr. Guidotti, 1/21/13 (Guidotti Dep.) at 3-20; Reproduced Record (R.R.) at 184-88. Employer's Expert opined there is insufficient evidence to support a conclusion that, as a matter of general causation, firefighting causes prostate cancer. Guidotti Dep. at 63-64; R.R. at 240. Therefore, Employer's Expert did not offer an opinion as to the specific causation of any firefighter's prostate cancer. Guidotti Dep. at 66-67; R.R. at 241.

### C. WCJ's Decision and Order

Initially, the WCJ noted that Claimant filed his April 2012 claim petition within 600 weeks of his last day of work as a firefighter (last day of exposure to hazards of the disease) as required by Section 301(f) of the Act,[2] (firefighters' cancer claims may be filed under Section 108(r) within 600 weeks after the last date of employment with exposure to the hazard). However, because Claimant filed his claim more than 300 weeks after his last date of exposure, the WCJ determined Claimant was not entitled to Section 301(f)'s rebuttable presumption that his cancer was causally related to his firefighter duties. WCJ Op., 9/15/14, at 11.

Moreover, after reviewing the medical evidence presented, the WCJ rejected Claimant's Expert's opinion as to causation as not credible and unpersuasive. In so doing, the WCJ found: (a) Claimant's Expert failed to

---

[2] Added by the Act of July 7, 2011, P.L. 251, 77 P.S. §414.

4

consider significant risk factors including race, age and family history; (b) Claimant's Expert's cited medical sources and studies did not consistently support his causation opinion; (c) Claimant's Expert admitted he lacked expertise in urology, occupational medicine, toxicology or epidemiology; conversely, Employer's Expert is board certified in occupational medicine, has a degree in toxicology and epidemiology, and he performed research studies on firefighters and cancer; and, (d) Claimant's Expert is not Claimant's treating physician and never examined Claimant or consulted with Claimant's treating physicians; additionally, Claimant's Expert appeared too willing to link prostate cancer to firefighting (in reviewing 30 cases of cancer in firefighters, Claimant's Expert linked the cancer to firefighting duties in virtually every instance). WCJ's Op. at 13-14.

Additionally, the WCJ accepted as credible Employer's Expert's opinion that prostate cancer is just different from other cancers in that a "large swath" of the male population will eventually be diagnosed with this condition regardless of their occupation. WCJ's Op. at 14. In particular, the WCJ accepted Employer's Expert opinion that prostate cancer is much more a disease of aging than of external influences. Id.

Consequently, the WCJ determined Claimant failed to establish his duties as a firefighter caused his prostate cancer. Conclusion of Law (C.L.) No. 1. The WCJ also determined Employer did not violate any provisions of the Act. C.L. No. 2. Therefore, the WCJ dismissed Claimant's claim and penalty petitions.

5

## D. Board's Decision and Order

Claimant appealed the dismissal of his claim petition to the Board. In affirming the WCJ, the Board observed that Claimant did not file his claim petition until April 20, 2012, more than 792 weeks after his date of alleged disability on February 11, 1997. See Bd. Op., 12/9/15, at 9. As such, the Board determined Claimant failed to make a claim within the 600-week period in Section 301(f) of the Act, 77 P.S. §414. For the same reason, the Board noted that Claimant was not entitled to the presumption of compensability in Section 301(f) for cancer claims filed within 300 weeks from Claimant's last exposure to the hazards of the disease. Bd. Op. at 9.

Further, the Board determined the WCJ articulated objective reasons for rejecting Claimant's Expert's testimony as to causation, regardless of Employer's Expert's testimony. See Bd. Op. at 17-18.

For these reasons, the Board affirmed the WCJ's dismissal of Claimant's claim petition. Claimant petitions for review.[3]

## II. Issues

Claimant presents three primary issues for our review. First, Claimant contends the Board erred in misinterpreting Section 301(f) of the Act as requiring that a firefighter must file a claim petition within 300 weeks of his last

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

occupational exposure in order for the rebuttable presumption of compensability to apply. Second, Claimant asserts, even assuming Section 301(f) creates a limitation on the time in which a firefighter diagnosed with cancer has to file a claim petition, the discovery rule applies and therefore extends the time for filing. Third, Claimant maintains the Board's determination that Claimant failed to establish an entitlement to benefits and that Employer's medical evidence rebutted the statutory presumption of compensability in Section 301(f) is not supported by competent evidence or pertinent legal authority.

In addition to the issues raised by Claimant, Employer contends Claimant failed to timely file his claim petition within 600 weeks of the last day he could have had relevant exposure to a Group 1 carcinogen. Rather, Employer asserts, Claimant filed his claim petition in April 2012, more than 790 weeks after his early 1997 cancer diagnosis. Therefore, Employer argues, Claimant's claim petition must be ruled untimely under Section 301(f) of the Act.

### III. Discussion
### A. Relevant Statutory Provisions; <u>Sladek</u>

In accord with our prior decisions involving cancer claims under the 2011 amendments to the Act, we begin with a review of the relevant statutory provisions and applicable case law. First, Section 301(c) of the Act, as amended by Act 46, pertinently provides (with emphasis added):

> (1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, <u>except as provided under subsection (f)</u>, arising in the course of his employment and related thereto, and such

7

disease or infection as naturally results from the injury ….

(2) The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include, unless the context clearly requires otherwise,  occupational disease as defined in section 108 of this act.  Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring <u>within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease</u> ….  The employer liable for compensation provided by … <u>section 108</u>, subsections (k), (l), (m), (o), (p), (q) or <u>(r)</u>, shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. …

77 P.S. §411(2).

Act 46 also amended Section 108 and added Section 301(f) of the Act. Section 108, which lists compensable occupational diseases, now includes (with emphasis added):

(r) <u>Cancer</u> suffered by a firefighter <u>which is caused by exposure to a known carcinogen</u> which is recognized as a Group 1 carcinogen by the [IARC].

77 P.S. §27.1.

Section 301(f) of the Act applies specifically to claims for compensation for cancer suffered by a firefighter and caused by direct exposure to

8

certain carcinogens while performing firefighter duties. Section 301(f) provides (with emphasis added):

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. … Notwithstanding the limitation under subsection (c)(2) with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, claims filed pursuant to cancer suffered by the firefighter under section 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of the disease. The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks.

77 P.S. §414.

In City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek), 144 A.3d 1011 (Pa. Cmwlth., 2016) (*en banc*), appeal granted, ___ A.3d ___ (Pa., No. 405 EAL 2016, filed March 1, 2017), we vacated an award of benefits under Section 108(r) for malignant melanoma contracted by a firefighter based on the Board's misinterpretation of the language in that provision.

9

In Sladek, we determined the Board misinterpreted Section 108(r) as indicating the General Assembly established a causal relationship between any Group 1 carcinogen and any type of cancer. We noted the Board erroneously reasoned that the claimant need not show exposure to a particular carcinogen in Group 1 or establish the carcinogens to which he was exposed specifically caused his malignant melanoma. See Sladek, 144 A.3d at 1021.

To the contrary, we observed, the General Assembly placed the words *caused by* between *cancer suffered by a firefighter* and exposure to a known Group 1 carcinogen for a reason. Therefore, a claimant must prove that his cancer is the type of cancer caused by the Group I carcinogens to which he was exposed. Id. If the claimant can establish his type of cancer is an occupational disease under Section 108(r), then the rebuttable presumptions in Sections 301(e) and (f) come into play. Id.

Further, in Sladek we reasoned that the presumption of causation in Section 301(e)[4] of the Act relieves the firefighter of the need to prove his workplace exposure rather than some other reason caused his cancer. If the firefighter can establish four years of continuous service and the absence of cancer

---

[4] Section 301(e) of the Act, 77 P.S. §413, which applies to occupational diseases generally, provides (with emphasis added):

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

prior to that service, he is entitled to compensation under Section 301(f). <u>Sladek</u>, 144 A.3d at 1020.

Accordingly, we vacated the Board's order in <u>Sladek</u> and remanded for a determination as to whether the claimant's medical evidence established that melanoma is a type of cancer caused by the Group 1 carcinogens to which the claimant suffered a work-related exposure.

## B. <u>Hutz</u>; <u>Demchenko</u>; <u>Fargo</u>

Following <u>Sladek</u>, this Court filed <u>Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)</u>, 147 A.3d 35 (Pa. Cmwlth. 2016), <u>petition for allowance of appeal pending</u> (Pa., No. 444 EAL 2016, filed October 3, 2016) and <u>Demchenko v. Workers' Compensation Appeal Board (City of Philadelphia)</u>, 149 A.3d 406 (Pa. Cmwlth. 2016), affirming the denial of Section 108(r) claims for compensation for prostate cancer allegedly caused by exposure to carcinogens as a firefighter. Similar to the present case, in <u>Hutz</u> and <u>Demchenko</u> the claimants failed to establish a causal relationship between their prostate cancer and their occupational exposure as a firefighter to Group 1 carcinogens.

In <u>Hutz</u> and <u>Demchenko</u> we addressed and rejected arguments very similar, if not identical, to Claimant's primary arguments here. First, as discussed in <u>Sladek</u>, before a claimant may avail himself of the rebuttable presumption of compensability in Section 301(f) of the Act, he must first establish his cancer is an occupational disease under Section 108(r) by proving his is the type of cancer caused by the Group 1 carcinogens to which he was exposed in the workplace.

11

Section 301(f) also requires that a claim petition be filed within 300 weeks of the claimant's last occupational exposure to a Group 1 carcinogen for the presumption of compensability to apply.

Further, in Fargo v. Workers' Compensation Appeal Board (City of Philadelphia), 148 A.3d 514 (Pa. Cmwlth. 2016), petition for allowance of appeal pending (Pa., No. 486 EAL 2016, filed November 4, 2016), we reaffirmed that Act 46 defined a distinct limitations period in Section 301(f), which mandates that an occupational disease claim under Section 108(r) be filed within 600 weeks of the last date of workplace exposure to a Group 1 carcinogen. Citing Hutz, we noted the key difference between the limitations periods in Sections 301(c)(2) and 301(f) is not the date upon which the periods start, but rather what must take place before the periods end. In the case of Section 301(c)(2), disability or death from the disease must occur within 300 weeks. In the case of Section 301(f), the claimant must file the claim within 600 weeks of the last date of workplace exposure to a Group 1 carcinogen. We determined this approach was consistent with our rationale in Hutz, wherein we observed that the date of filing of the claim was determinative as to the applicability of the 300-week presumption of compensability in Section 301(f).

We then summarized the requirements of Section 301(f)'s two-tiered limitations period for Section 108(r) occupational disease claims as follows:

> First, a claimant must file the claim within 300 weeks of the last date of work with exposure to a known Group 1 carcinogen; if the claimant fails to do so, he is not foreclosed from bringing a claim by Section 301(f), but he loses the statutory presumption of Sections 301(e) and

12

301(f). However, if the claimant does not file the claim until more than 600 weeks after the date of last workplace exposure, the claimant is foreclosed from bringing that claim in its entirety.

Fargo, 148 A.3d at 520.

We also *rejected* Claimant's contention that if Section 301(f) requires a claim under Section 108(r) be filed within 600 weeks of the last date of workplace exposure, then it is subject to a discovery rule to extend the time for filing. In short, we agreed with the Board that the 600-week period in Section 301(f) acts as a statute of repose and is not subject to the discovery rule, which applies to the three-year statute of limitations in Section 315 of the Act, 77 P.S. §602. See Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Korach), 883 A.2d 579, 588 n.11 (Pa. 2005) (a statute of repose, unlike a statute of limitations, is substantive rather than procedural and extinguishes both the remedy and the cause of action; thus, a statute of repose may also prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute).

In light of our decisions in Sladek, Hutz, Demchenko and Fargo we review the issues raised in the present appeal.

**C. Timeliness of Claim Petition**

We first address Employer's contention that Claimant's claim petition was untimely under Section 301(f) of the Act because he filed it more than 600

weeks after his prostate cancer diagnosis in January 1997. As noted in Fargo, Hutz and again recently in Lucas v. Workers' Compensation Appeal Board (City of Sharon) (Pa. Cmwlth., No. 2606 C.D. 2015, filed December 20, 2016) (unreported), petition for allowance of appeal pending (Pa., No. 27 EAL 2017, filed January 17, 2017), Section 301(f) mandates that a cancer claim under Section 108(r) be filed within 600 weeks of the last date of workplace exposure to a Group 1 carcinogen.

Here, the Board noted, Claimant received a prostate cancer diagnosis on February 1997, more than 790 weeks prior to the filing of his claim petition in April 2012. Thus, the Board opined that Claimant failed to make a timely claim within the 600-week period specified in Section 301(f). Bd. Op. at 9. The dates in the Board's opinion are consistent with the record. Claimant testified his family doctors diagnosed him with prostate cancer on February 11, 1997. WCJ Op., Finding of Fact (F.F.) No. 4; Dep. of Thomas Logan, 11/9/12 (Logan Dep.), at 21-22. A couple of months after diagnosis, Claimant underwent surgery. F.F. No. 4; Logan Dep. at 24. As a result, Claimant missed approximately six months of work. F.F. No. 4; Logan Dep. at 24. As reflected by his claim petition, Claimant's wage loss attributable to his prostate cancer ended May 1, 1997.

However, Claimant seeks ongoing medical benefits and there is no evidence in the record that Claimant fully recovered from his cancer. To the contrary, Claimant's Expert noted in his April 16, 2012 report that following his radical prostatectomy in 1997, his PSA was low at less than .1 nanograms per ml. See Report of Dr. Barry L Singer, 4/16/12, at 2; R.R. at 60. However, Claimant's

14

PSA rose from .083 in February 2001 to 3.1 in August 2011.  Id.  In addition, Claimant's Expert indicated Claimant "remains at a significant risk of dying from this disease."  Id.

In light of Claimant's residual prostate cancer, we agree with the WCJ's initial determination that Claimant timely filed his 2012 claim petition within 600 weeks of his last day of exposure to carcinogens as a firefighter in 2004.  See WCJ Op. at 11.  Consequently, we reject Employer's contention that Claimant's claim petition was untimely under Section 301(f).[5]

## D. Claimant's Contentions
### 1. Section 301(f)'s Presumption of Compensability

Claimant first contends the Board erred in misinterpreting Section 301(f) of the Act as requiring that a firefighter must file a claim petition within 300 weeks of his last occupational exposure in order for the rebuttable presumption of compensability to apply.  Claimant asserts Act 46 placed cancer suffered by firefighters caused by occupational exposure to carcinogens on Section 108's list of occupational diseases compensable under Section 301(c)(2) of the Act.  Section 301(c)(2) requires that an occupational disease must "occur" or manifest within *300 weeks of the last date of the claimant's exposure to the hazard*.  77 P.S. §411(2).  The newly added Section 301(f), Claimant argues, modified the 300-week manifestation period by extending it to 600 weeks.  Claimant further argued that the rebuttable presumptions of causation in Section 301(e) and compensability

---

[5] Employer in this case did not raise a retroactivity challenge to Section 301(f) of the Act.

in Section 301(f) are available for firefighters with a claimable disease diagnosed within 300 weeks of their last work-related exposure to carcinogens.

In support of his position, Claimant argues the Supreme Court rejected the Board's interpretation of the 300-week manifestation period in Section 301(c)(2) of the Act as requiring a claim petition be filed within that time period. See City of McKeesport v. Workers' Comp. Appeal Bd. (Miletti), 746 A.2d 87 (Pa. 2000) (proper focal point under Section 301(c)(2) is whether the occupational disease occurred within 300 weeks of the claimant's last exposure, regardless of when the claim was filed). To that end, Claimant asserts, the three-year statute of limitations in Section 315 of the Act, 77 P.S. §602, does not begin to run in occupational disease cases until the claimant learns, by a competent medical diagnosis, that his disability is work-related. Price v. Workmen's Comp. Appeal Bd. (Metallurgical Resources), 626 A.2d 114 (Pa. Cmwlth. 1993). Under the WCJ's erroneous interpretation, Claimant maintains, a firefighter diagnosed with cancer would have to file a claim petition within 300 weeks of the occurrence of the disease in order to qualify for the rebuttable presumption of causation regardless of whether the firefighter knows the disease is work-related.

We disagree. We distinctly addressed and rejected these precise issues in Sladek, Hutz, Demchenko and Fargo. Most importantly, as discussed in Sladek, before a claimant may avail himself of the rebuttable presumption of compensability in Section 301(f) of the Act, he must first establish his cancer is an occupational disease under Section 108(r) by proving his cancer is the type of cancer caused by the Group 1 carcinogens to which he was exposed in the

16

workplace. Given the WCJ's rejection of Claimant's Expert's opinion that Claimant's prostate cancer was causally related to his exposure to Group 1 carcinogens as a firefighter, Claimant is not entitled to the evidentiary presumptions in Section 301(e) and (f) of the Act. Demchenko; Fargo; Hutz, and Sladek.

Moreover, Claimant filed his claim petition in April 2012, more than 300 weeks after his last date of employment with exposure to the hazard, which occurred in 2004. F.F. No. 21(d). For this additional reason, Claimant was not entitled to the presumption of compensability in Section 301(f) of the Act. Demchenko; Fargo.

## 2. Discovery Rule

Second, Claimant asserts, even assuming Section 301(f) creates a limitation on the time in which a firefighter diagnosed with cancer has to file a claim petition, the discovery rule applies and therefore extends the time for filing. Therefore, Claimant argues, the statute of limitations does not begin to run in occupational disease cases until the claimant learns, by a competent medical diagnosis, that his disability is work-related. Price.

We disagree. As we observed in Hutz, Claimant misstates the issue. The issue is not whether a statute of limitations resulted in the denial of Claimant's firefighter cancer claim. As explained above, his filing of the claim was timely. Rather, the issue is whether Claimant may rely on the statutory presumption of compensability in Section 301(f).

17

In any event, Claimant failed to establish a causal relationship between his prostate cancer and his occupational exposure to a carcinogen recognized as a Group 1 carcinogen by the IARC. Thus, regardless of the date he filed his claim petition, the presumption of compensability in Section 301(f) of the Act is unavailable to Claimant. Sladek. Therefore, any further discussion of whether the discovery rule applies to the 300-week filing limitation period for the application of the presumption of compensability is unnecessary in this case. As such, this issue is moot. See Battiste v. Borough of E. McKeesport, 94 A.3d 418 (Pa. Cmwlth. 2014) (a court may, on its own, raise the issue of mootness as courts cannot decide a controversy that no longer exists; an actual controversy must be extant at all stages of review).

### 3. Medical Evidence of Causation

Claimant also contends the Board's determination that Claimant failed to establish an entitlement to benefits and that Employer's medical evidence rebutted the statutory presumption of compensability in Section 301(f) is not supported by competent evidence or pertinent legal authority.

In particular, Claimant asserts Employer's Expert failed to offer an opinion specific to Claimant's individual circumstances. Claimant further asserts the WCJ failed to address Employer's Expert's admissions that: epidemiology measures risks in populations, not in individual cases; a general causation or epidemiologic opinion is not dispositive whether exposures were a substantial contributing factor in a specific individual's cancer; and, for specific causation,

18

clinical judgment, taking into account the individual characteristics of the claimant is required.

Here, Claimant maintains, Employer's Expert testified he did not question Claimant's diagnosis, and he did not provide any opinion as to what particularly caused Claimant's or any other firefighter's cancer. In the absence of any opinion specific to the cause of his cancer, Claimant argues Employer's Expert's opinion cannot rebut the presumption of compensability in Section 301(f).

As discussed above, regardless of the date Claimant filed his claim petition, the presumption of compensability in Section 301(f) of the Act is unavailable to Claimant. Sladek; Hutz. Thus, although Employer's Expert did not offer an opinion specific to Claimant's individual circumstances, the presumption of compensability in Section 301(f) did not come into play in this case.

As such, the burden of establishing causation remained with Claimant. However, the WCJ found Claimant's Expert's testimony failed to credibly or persuasively prove that Claimant's exposure to Group I carcinogens constituted a significant contributing factor in the cause of his prostate cancer. WCJ Op. at 13-14.

In sum, Claimant's Expert's testimony failed to establish a causal relationship between Claimant's prostate cancer and his occupational exposure to Group 1 carcinogens. WCJ Op. at 13-14. Therefore the burden of rebutting an established causal relationship did not fall upon Employer. Hutz; Sladek.

19

Nonetheless, we reject Claimant's contention that Employer's Expert's testimony does not constitute substantial competent evidence in support of the WCJ's determination that Claimant's medical evidence did not support the finding of a causal relationship between Claimant's exposure to carcinogens as a firefighter and his prostate cancer. Although Claimant argues that Employer's Expert admitted that general epidemiology measures risks in populations, not individuals, this does not render incompetent his testimony that Claimant's Expert is not an epidemiologist and that the studies he relied on were not an adequate basis for Claimant's Expert's opinion that the prostate cancers of the firefighters' cases he reviewed were work-related. See Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods), 37 A.3d 72 (Pa. Cmwlth. 2012) (in determining whether medical evidence is unequivocal and therefore competent to support a factual determination, we review the testimony as a whole and do not base our analysis on a few words taken out of context); Hannigan v. Workmen's Comp. Appeal Bd. (Asplundh Tree Expert Co.), 616 A.2d 764 (Pa. Cmwlth. 1992) (same).

## IV. Conclusion

For the above reasons, we agree with the Board's order upholding the WCJ's denial of Claimant's claim petition. Accordingly, we affirm.

_____

ROBERT SIMPSON, Judge

20

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Thomas Logan, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 2605 C.D. 2015 |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (City of Philadelphia), | : | |
| Respondent | : | |

# **O R D E R**

**AND NOW**, this 9th day of March, 2017, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Logan,      :
    Petitioner    :
          : No.  2605 C.D. 2015
    v.      :
          : Submitted: September 30, 2016
Workers' Compensation  Appeal :
Board (City of Philadelphia),  :
    Respondent  :


BEFORE: HONORABLE ROBERT SIMPSON, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


***OPINION NOT REPORTED***

CONCURRING OPINION
BY JUDGE McCULLOUGH      FILED:  March 9, 2017


   I concur in the result reached by the thoughtful Majority because there is no dispute that Thomas Logan (Claimant) filed his claim petition more than 300 weeks after his last day of service as a firefighter.  However, I write to further clarify our application of the presumption in Section 301(f) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §414, and its relationship to Section 108(r) of the Act, 77 P.S. § 27.1(r).

   Section 301(f) reads in pertinent part as follows:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct

exposure to a carcinogen referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting.

77 P.S. §414.

The Majority opinion restates the way we have come to apply section 301(f). The advantage, as we described in *City of Philadelphia v. Workers' Compensation Appeal Board (Sladek)*, 144 A.3d 1011, 1020 (Pa. Cmwlth. 2016), *appeal granted* (Pa., No. 405 EAL 2016, filed March 1, 2017), is that "the presumption relieves the firefighter of the need to prove that his cancer was caused by his workplace exposure and not another cause."

While it is not necessary here to rule on the presumption because Claimant filed his claim petition more than 300 weeks after his last employment as a firefighter, it is important to clarify some of the language which appears here and previously in *Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)*, 147 A.3d 35, 49 (Pa. Cmwlth. 2016), *petition for allowance of appeal pending* (Pa., No. 444 EAL 2016, filed October 3, 2016). In *Sladek*, as reiterated by the Majority here, we held that "[i]t was incumbent upon Claimant to prove that his malignant melanoma is *a type of cancer* [emphasis added] *caused by* [emphasis in original] the Group I carcinogens to which he was exposed in the workplace" in order to assert the presumption. 144 A.3d at 1021-22.

While the Majority primarily focuses on the interpretation of the presumption that is consistent with the legislative intent, the following language

PAM - 2

used in this opinion and in *Hutz* could be misconstrued in application of the presumption. Specifically, the majority cites *Sladek* as standing for the proposition that to gain the benefit of the presumption, the firefighter must prove, *inter alia*, **that *his* cancer was "specifically caused"** by a Group I carcinogen. (Slip op. at 10.) This same language appeared in *Hutz,* as follows: "Therefore, a claimant must **prove his cancer is caused** by the Group I carcinogens to which he was exposed in the workplace." 147 A.3d at 49.

The noted language here and in *Hutz* could be viewed as changing the burden of establishing entitlement to the presumption. To avoid any misconception concerning the presumption, I reiterate that **a claimant need <u>not</u> show that his cancer was caused by the Group I carcinogen,** rather, **claimant need <u>only</u> show that his cancer was a type of cancer which is caused** by exposure to the Group I carcinogen in the workplace. To say otherwise could be viewed as modifying the presumption we recognize as relieving the firefighter of the need to prove that his cancer was caused by his workplace exposure and not another cause. *Sladek*, 144 A.3d at 1021-22. Accordingly, although I join the result in the present case, I must depart from the Majority's statement and the same statement in *Hutz*.

Finally, the majority also states that Claimant must prove that his cancer is "**<u>the</u> type** of cancer caused by the Group I carcinogens." (Majority op. at 10.) However, the language used in *Sladek* was that Claimant gets the presumption if he shows that his cancer is "**<u>a</u> type** of cancer" caused by a Group I carcinogen. 144 A.3d at 1022. In other words, the firefighter-claimant obtains the benefit of the presumption once he establishes that his cancer is *one of a type* of the cancers

on the International Agency for Research on Cancer (IARC) list which is caused by exposure to the carcinogen in the workplace.

It is a not a preordained formula, whereas a carcinogen is tied only to a closed-class or defined cancer, and the claimant has the flexibility to demonstrate that any one of the more than 120 types of cancer is known to develop or derive from the carcinogen to which he was exposed. If the claimant identifies exposure to such a Group I carcinogen, through competent and admissible testimony, he is entitled to the presumption that his injury occurred in the course of his employment. Pursuant to the statute, the only way the employer can rebut this presumption is to adduce competent evidence showing that the claimant's cancer "was not caused by the occupation of firefighting," but by something else, e.g., genetics, happenstance, diet, exposure to elements at a home, etc. Otherwise, the entire concept of the presumption would be nullified if, to determine whether the presumption should apply, both the claimant and employer could litigate, as a threshold matter involving fact-finding by the WCJ, whether or not the claimant's cancer was **the** only, or even the most likely, cancer to derive from a known carcinogen. This is simply not the test for the presumption but the Majority appears to at least suggest that it is.

The clarifications discussed herein are intended to prevent any misapplications of the presumption which could result in conflating exposure and causation. Consistent with our holding in *Sladek*, a presumption of work-relatedness applies if the firefighter-claimant proved (1) four years of service, (2) successful passage of the physical examination, (3) no evidence of cancer in such an examination, (4) evidence of exposure to an IARC Group I carcinogen, and (5) the filing of a claim petition within 300 weeks of the date of last employment as a

firefighter.  Such a presumption is rebuttable, of course, but with this clarification, I believe this Court upholds the letter and spirit of the Act 46 revisions to the Act.[1]

_____
PATRICIA A. McCULLOUGH, Judge

---

[1] Act of July 7, 2011, P.L. 251, No. 46.